**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Shawn D. Catz, *et al.*, ) | |
|     Plaintiffs, ) | CV 03-91-TUC-FRZ (JCG) |
| vs. ) | **REPORT & RECOMMENDATION** |
| Susan R. Chalker, *et al.*, ) | |
|     Defendants. ) | |

    Pending before the Court is Defendant TIAA-CREF's Motion for Award of Attorneys' Fees filed on October 2, 2006. (Doc. No. 125.) Plaintiff Robert Catz ("Catz") filed a response on October 17, 2006 (Doc. No. 131) in which Plaintiff Jason Catz ("J. Catz") joined. (Doc. No. 132.) Defendant TIAA-CREF timely replied. (Doc. No. 137.)

    Also pending before the Court is Defendants Karp & Everlove and Susan Chalker's ("Chalker Defendants") Motion for Award of Attorneys' Fees filed on October 5, 2006. (Doc. No. 129.) Plaintiff Robert Catz filed a response on October 17, 2006 (Doc. No. 131) in which Plaintiffs Shawn Catz ("S. Catz") and J. Catz joined. (Doc. Nos. 133, 134.) The Chalker Defendants timely replied. (Doc. No. 138.)

    Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin for a report and recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order granting the motions.

**FACTUAL BACKGROUND**

    The preliminary facts of this case are set forth by the Sixth Circuit in *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *as amended* in 243 F.3d 234 (6th Cir. 2001):

Catz and Chalker, lawyers and former law professors, were married in 1980 and they had one child born of this marriage. On April 10, 1989, while Catz was living in Ohio and Chalker was living in Florida, Catz filed for divorce in Ohio. When Chalker did not answer, Catz was awarded a judgment of divorce by default. Chalker alleges that she was never served with the divorce summons and complaint because Catz sent them to a mailing address in Florida where they would be intercepted by Catz's friend and not delivered to her. She asserts that she did not learn of the Ohio divorce decree until late 1994. Whatever accounted for Chalker's absence, the Ohio court, after determining that the couple had not intermingled their personal property, awarded Catz his personal property located in Ohio and awarded Chalker her personal property then in her possession. (The judgment entry contained no mention of the financial assets now at issue.) The court declined to adjudicate custody of the child.

After the Ohio divorce decree, Catz and Chalker continued to see one another, and, according to Chalker, comported themselves as a married couple by applying as such for insurance and club memberships. Catz, however, alleges that during this period Chalker indicated that she was divorced on tax and student-loan forms. Whatever their marital status, in 1993 they moved to Arizona together.

On November 4, 1994, Chalker filed for divorce in the Pima County, Arizona, Superior Court, and on December 1, moved ex parte for a temporary restraining order barring the transfer of funds, claimed by her as community property, that were invested with entities including (to name those that are parties to the present actions) TIAA/CREF, Waterhouse Securities, and a number of mutual funds in the Fidelity group. In support of the motion, Chalker filed affidavits by herself and by a friend of the couple averring that Catz had vowed to put the assets out of Chalker's reach. The court granted Chalker's motion the same day the affidavits were filed.

Catz claims that he did not receive notice of Chalker's divorce action until December 14, 1994, over five weeks after it was filed and two weeks after the TRO. He then immediately filed an "emergency motion" to dismiss in the same court, on the grounds that the Ohio divorce decree, including its division of property, had to be given full faith and credit. Catz further alleged that the TRO freezing his assets would cause him severe hardship, including the destruction of his business as a concert promoter and bar owner, and render him unable to pay rent and other personal obligations.

The Arizona court initially scheduled a hearing on Catz's motion for December 19, 1994, but then-according to Catz, as a result of collusion between the court's chief judge and Chalker's counsel, a pro tempore judge of the court-continued the hearing until an January 11, 1995.

On December 19, Catz filed a notice of removal of the divorce action in the United States District Court for the District of Arizona, alleging federal jurisdiction based on the divorce action's purported collateral attack, on federal equal protection and due process grounds, on the Ohio divorce decree. On January 12, 1995, that federal court remanded the case to state court, reasoning that it was a domestic relations controversy over which it would be inappropriate to exercise federal jurisdiction. (On March 14, 1995, Catz filed a second notice of removal in the district court; on March 31, the court remanded and ordered the clerk not to accept further pleadings from Catz without permission of the court.)

Also on December 19, 1994, Catz filed in the district court a § 1983 complaint ("the first Arizona federal action") alleging that Chalker's resonantly-named divorce attorneys, Annette Everlove and Leonard Karp, had deprived him of due process "by invoking the machinery of the State of Arizona to effect an ex parte seizure of his property after they were aware of the possible existence of a prior controlling state court judgment." Catz's complaint also alleged that Chalker and her lawyers had fraudulently concealed the existence of the Ohio divorce decree from the Arizona court. In April 1995, for reasons unexplained, Catz filed a notice of voluntary dismissal of this action.

On December 20, 1994, Catz separately filed, in the same court, an action ("the second Arizona federal action") against Chalker seeking a declaratory judgment that Chalker had been properly served in the Ohio divorce proceeding. This action also included a § 1983 claim against Chalker similar to the one alleged in the first Arizona federal action against Chalker's attorneys. On April 10, 1995, he filed a motion for voluntary dismissal without prejudice in the second action, too. Chalker, however, filed a brief in opposition, and the district court, adopting by reference the reasons stated in Chalker's brief, dismissed the case with prejudice on June 8, 1995.

Meanwhile, claiming that the freezing of his accounts had left him destitute and homeless, Catz left Arizona in early 1995 for Nashville, Tennessee, to take refuge with his sons, Shawn and Jason. Thus, he was not in Arizona during the remainder of the ongoing divorce proceedings in Pima County Superior Court. Catz claims that he sent a change of address form to that court, showing that he had moved to Nashville, but that the court refused to receive this form, which Catz suggests contributed to his receiving notices of deposition and hearing dates only after they occurred. After Catz failed to appear at a February 9, 1995 deposition, Chalker moved for sanctions. Catz claims that the hearing on that motion was held without notice to him. Nevertheless, the court found that Catz's failure to appear was part of a pattern of "unreasonable, groundless, abusive, or obstructionist conduct," held him in contempt, and barred him from filing further pleadings, answers, or from introducing evidence.

On March 14, 1995, the Pima County court, again with Catz absent, ruled that Catz had fraudulently obtained his Ohio divorce, and refused to give the Ohio divorce decree full faith and credit. In light of Catz's failure to appear, the court granted Chalker's petition of divorce by default. The decree awarded Chalker all the funds frozen by the TRO, $1,000 per month in maintenance, and $700 per month in child support. Catz submitted a motion to vacate these orders, but the clerk did not file his motion, and returned it to Catz only after the time to file a notice of appeal had expired. He attempted to file a special appeal, but the Arizona Court of Appeals declined to accept jurisdiction, and the Arizona Supreme Court denied leave to appeal. Catz filed a petition for certiorari with the United States Supreme Court, which was denied. Catz v. McDonald, 520 U.S. 1168, 117 S.Ct. 1433, 137 L.Ed.2d 540 (1997).[1]

*Id*. at 281-83.

---

[1] In two previous orders, the District Court took judicial notice of the pleadings, briefs, memoranda and motions filed in the underlying and related litigation. (Doc. Nos. 122 & 123.)

1  On July 27, 1995, Catz filed a complaint in the United States District Court for the
2  Northern District of Ohio against the Chalker Defendants and sought a temporary restraining
3  order against the financial institutions holding the assets awarded to Chalker by the Pima
4  County court to bar them from disbursing those funds. *Catz*, 142 F3d. at 283-84. The Ohio
5  district court dismissed the case with prejudice. *Id*. at 284. Catz also filed an action in the
6  United States District Court for the Middle District of Tennessee; that action was also
7  dismissed. *Id*. at 290. Catz appealed both dismissals, which were consolidated before the
8  United States Court of Appeals for the Sixth Circuit. *Id*. at 282. The Sixth Circuit affirmed
9  in part and reversed in part the decision of the Ohio district court, and reversed and remanded
10 the decision of the Tennessee district court. *Id*. at 290, 295. Following remand, the
11 Tennessee action was transferred to this Court on February 4, 2003, giving rise to the present
12 action. (Doc. No. 1, 31.)

13  Following the transfer of Plaintiffs' action to this Court, Plaintiffs were ordered to file
14 amended complaints[2] that eliminated allegations and claims that were barred in light of the
15 Sixth Circuit's opinion in *Catz*. (Doc. No. 50.) On February 7, 2005, Plaintiffs filed
16 amended complaints against the Chalker Defendants, TIAA-CREF, Fidelity Investments, and
17 Waterhouse Securities alleging a Fourteenth Amendment due process claim as well as claims
18 for negligence, fraud, deceit, misrepresentation, intentional infliction of emotional distress,
19 abuse of process, wrongful attachment and "constructive trust for equitable disgorgement of
20 misbegotten grossly excessive attorneys fees." (Doc. Nos. 51 & 52.) The District Court
21 dismissed Plaintiffs' action on September 19, 2006 on the ground that Plaintiffs' claims were
22 precluded by previous litigation, with the exception of a Fourteenth Amendment due process
23 claim. (Doc. No. 123.) The Court dismissed Plaintiffs' Fourteenth Amendment due process
24 claim for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the ground that

---

[2] Plaintiffs' action consists of two complaints which were consolidated in the Tennessee district court and remained consolidated upon transfer to this jurisdiction; the complaints are essentially identical but for the fact that one complaint seeks damages and one complaint seeks equitable relief. (Doc. Nos. 51, 52.)

1  Defendants were not state actors.   Shortly after the judgment was entered, Defendants
2  moved for award of their fees incurred in defending the action.

## DISCUSSION

**1.    Defendant TIAA-CREF's motion for attorneys' fees**

   *a.    TIAA-CREF is not entitled to attorneys' fees pursuant to 42 U.S.C. § 1988*

Defendant TIAA-CREF argues that it is entitled to its attorneys' fees pursuant to the Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988. The case construction of § 1988 indicates that, in a § 1983 action, a prevailing party defendant can recover fees if it demonstrates that the plaintiff's action was frivolous, vexatious or meritless. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). This argument cannot succeed, however, because the district court has already construed Plaintiffs' complaint as alleging a § 1983 claim only against the Chalker Defendants. (Doc. No. 123, pgs. 12-17.) The district court granted a motion to dismiss filed by the Chalker Defendants in part on the ground that Plaintiffs' § 1983 claim failed because Plaintiff did not allege that the Chalker Defendants were state actors. (*Id.*) The district court then concluded Defendant TIAA-CREF's motion for summary judgment was moot because the dismissal resolved the entire case against the real parties in interest. (*Id.* at n.12.) Specifically, the Court stated:

> TIAA-CREF, like Waterhouse Securities and Fidelity Investments, are simply disinterested stakeholders of various securities accounts who have withheld distributing all of the funds in question because the real parties in interest have both asserted that they are the rightful owners. As this Order has conclusively found that the private Defendants are not liable to Plaintiffs, and this case has been dismissed with prejudice as to all parties, the Court need not address TIAA-CREF's motion for summary judgment.

Review of the amended complaint does not reveal that Plaintiffs asserted a § 1983 claim against TIAA-CREF. Accordingly, § 1988 is not a proper basis from which TIAA-CREF can seek attorneys' fees.

   *b.    TIAA-CREF is entitled to an award of fees pursuant to 28 U.S.C. § 1927*

Defendant TIAA-CREF also argues that it is entitled to attorneys' fees pursuant to 28 U.S.C. § 1927, which provides that "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings

5

in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 sanctions may be awarded against a *pro se* plaintiff who is a lawyer. *See Sassover vs. Field*, 973 F.2d 75, 80 (2d Cir. 1992). Section 1927 is "concerned only with limiting the abuse of court processes" and is "indifferent to the equities of a dispute and to the values advanced by the substantive law." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). The law of this circuit requires that imposition of costs and fees under § 1927 may be made only on a finding that the attorney acted "'recklessly or in bad faith.'" *United States v. Associated Convalescent Enters.*, 766 F.2d 1342, 1346 (9th Cir.1985) (quoting *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983) and *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir.1982)). The "mere fact that a [pleading] is frivolous does not of itself establish bad faith." *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983). Hence, the "bad faith" factor in part distinguishes § 1927 from other sanction provisions, such as Fed.R.App.P. 38 and 28 U.S.C. § 1912 (1982), which permit imposition of damages and costs on parties for frivolous appeals.

TIAA-CREF argues that Plaintiffs' actions unreasonably and vexatiously multiplied the proceedings because (a) TIAA-CREF's actions challenged in this matter were at the direction of a previous Pima County Superior Court order to which Plaintiffs did not object, (b) Plaintiffs' action sought relief which Plaintiffs knew could not be granted, and (c) Plaintiffs initially indicated that they would dismiss TIAA-CREF from the lawsuit, but then reneged on that agreement.[3] In response, Plaintiffs contend that the Sixth Circuit's decision in related proceedings gave them a good faith basis for filing the present action against TIAA-CREF in this Court.

As the District Court noted in its Order dismissing Plaintiffs' action on September 19, 2006, the Sixth Circuit's opinion in *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *as*

---

[3] TIAA-CREF also argues the reasonableness of its fees in compliance with LRCiv 54.2, the local rule which governs claims for attorneys' fees. LRCiv 54.2 does not apply, however, to claims for attorneys' fees and related expenses for violations of 28 U.S.C. § 1927. *See* LRCiv 54.2(a).

*amended* in 243 F.3d 234 (6th Cir. 2001), is the most important precedent in this long-standing case, as the Sixth Circuit finally had the opportunity to review in one proceeding the numerous claims stemming from the cases that had been dismissed in Arizona, Ohio, and Tennessee. (Doc. No. 123.) In that case, the Sixth Circuit concluded that each of Plaintiffs' claims were barred by the doctrine of res judicata with one exception: Catz's claim that actions of the Pima County Superior Court taken or discovered subsequent to April 10, 1995, were in contravention of his due process rights under the Fourteenth Amendment. *Id.* at 289, 290. Catz presented only two factual allegations against the Pima County Superior Court which occurred or were discovered by Catz subsequent to April 10, 1995: (1) a due-process violation in the failure of the Pima County court clerk to file motions for post-judgment relief that Catz mailed on March 29, 1995, followed by the clerk's delay in mailing the unfiled motions back to Catz prior to expiration of the time for direct appeal, and (2) an alleged "clandestine, ex parte " meeting between Chalker's attorney, Karp, and the chief judge of the Pima County Superior Court on December 16, 1994, which Catz did not discover until Karp filed an application for attorney fees on May 5, 1995, in which Karp itemized that meeting as billable time. *Id.* at 288. The Sixth Circuit expressly held that Plaintiffs did not have a viable claim against the Chalker Defendants under 42 U.S.C. § 1983; Plaintiffs' due process claim would lie only against the Pima County Superior Court. *Id.* at 289.

Plaintiffs' amended complaints failed to name the Pima County Superior Court or its agents as Defendants, instead alleging a Fourteenth Amendment due process claim as well as claims for negligence, fraud, deceit, misrepresentation, intentional infliction of emotional distress, abuse of process, wrongful attachment and "constructive trust for equitable disgorgement of misbegotten grossly excessive attorneys fees" against the Chalker Defendants and naming TIAA-CREF and other financial institutions as disinterested stakeholders. (Doc. Nos. 51 & 52.) Contrary to Plaintiffs' assertion, the Sixth Circuit's decision did not give them a good faith basis for filing the present action against TIAA-CREF in this Court, as Plaintiffs' amended complaints were completely unrelated and outside the scope of the one surviving claim that the Sixth Circuit identified for Plaintiffs: a due

7

process claim against the Pima County Superior Court. As the District Court noted in dismissing Plaintiffs' action, Plaintiffs acted "in dereliction of this Court's Order" by asserting countless allegations and claims that were barred by the Sixth Circuit's opinion. (Doc. No. 123.) Thus, Plaintiffs' actions required Defendants to defend a patently meritless lawsuit clearly foreclosed by the doctrine of res judicata.

It is especially appropriate to impose sanctions in situations where the doctrines of res judicata and collateral estoppel plainly preclude re-litigation of the suit. *McLaughlin v. Bradlee*, 602 F.Supp. 1412, 1417 (D.C. Dist. 1985) (collecting cases). The imposition of sanctions is one of the few options available to a court to deter and punish people who relitigate cases hopelessly foreclosed. *Id.* In the present case, the Court's finding that Plaintiffs' claims were precluded by previous litigation could not have been a surprise to Plaintiffs, since the Sixth Circuit had already reached the same conclusion. In addition, the district court essentially warned Plaintiffs not to re-assert claims barred by previous litigation when it ordered Plaintiffs to file amended complaints that eliminated allegations and claims that were barred in light of the Sixth Circuit's opinion in *Catz*. (Doc. No. 50.) Plaintiffs' actions in pursuing clearly barred claims supports an award of sanctions pursuant to 28 U.S.C. § 1927.

Previous cautions by a court and/or sanctions against a plaintiff also constitutes evidence of vexatious intent. *See McLaughlin*, 602 F.Supp. at 1418. Catz has received numerous such warnings by this Court and others during the course of this litigation. In March of 1995, after Catz filed duplicative lawsuits in this Court, the Court resorted to issuing an order directing the Clerk of the Court not to accept further pleadings from Catz without the Court's permission. *See Catz*, 142 F.3d at 283. In June of 1995, this Court dismissed with prejudice a lawsuit filed by Catz against Chalker arising from the same facts which form the basis of this lawsuit on the ground that Catz was abusing the federal legal system in order to intimidate Chalker. *Id.* at 287. Also in 1995, the Pima County Superior Court found that Catz had engaged in "unreasonable, groundless, abusive or obstructionist conduct," held him in contempt, and barred him from filing future pleadings. *Id.* at 283. In

1998, the Sixth Circuit admonished Plaintiffs for making misrepresentations to the Sixth Circuit: Plaintiffs stated to the Sixth Circuit that this Court had dismissed one of Catz's previous actions for want of a federal question, when in fact this Court dismissed the action on the ground that Catz was abusing the federal legal system. *Id.* at 287, n.7. Plaintiffs' conduct, in the face of abundant warnings from the courts, further supports a finding that Plaintiffs brought this lawsuit against TIAA-CREF in bad faith.

Finally, the Court finds that Plaintiffs acted in bad faith because it agrees with TIAA-CREF's assertion that Plaintiffs deliberately reneged on their initial offer to dismiss TIAA-CREF from the lawsuit after acknowledging that dismissal of TIAA-CREF was appropriate. *See Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159 (10th Cir. 1985) (holding that district court did not err in assessing costs and attorney fees against plaintiffs and their attorney under 28 U.S.C.A. § 1927 because plaintiff's attorney, in bringing action against former dealer service representative of automobile manufacturer without grounds and continuing to assert claims for liability against him with knowledge that there was no factual or legal basis for claim of liability long after it would have been reasonable and responsible to have dismissed the claims, acted to multiply the proceedings in an unreasonable and vexatious manner). In its initial attempts to streamline this litigation, the district court ordered the parties to file a joint status report. (Doc. No. 50.) In the joint report, Plaintiffs indicated that they would stipulate to a dismissal of all claims against TIAA-CREF if TIAA-CREF would stipulate to a consent decree that it would abide by any future order of this Court regarding the voidness of the Arizona state court's Qualified Domestic Relations Order (QDRO). (*Id.*) Following the filing of Plaintiffs' amended complaints, TIAA-CREF sent a letter to Plaintiffs reminding them of this proposed stipulation and requested that it be dismissed from the action. (TIAA-CREF Motion, Ex. 3.) Plaintiffs failed to respond.

Accordingly, the Court finds that Plaintiffs acted with vexatious intent toward TIAA-CREF in filing the present action against them, and recommends that TIAA-CREF be awarded its attorneys' fees incurred herein.

### *c.    TIAA-CREF is entitled to an award of its total fees*

Plaintiffs argue that TIAA-CREF should not be entitled to recover the entirety of their fees incurred. 28 U.S.C. § 1927 permits a prevailing party to recover only the *excess* costs, expenses and attorneys' fees reasonably incurred because of vexatious conduct by the opposing party. According to Plaintiffs, TIAA-CREF has not distinguished between the costs that it would ordinarily incur as a stakeholder defendant in any case and the costs it incurred as a result of specific acts by Plaintiffs that multiplied the proceedings. In so arguing, Plaintiffs wrongly assume that some portion of the present litigation against TIAA-CREF was justified and reasonable. In fact, the *entire lawsuit* against TIAA-CREF within this jurisdiction constitutes vexatious conduct by Plaintiffs. As explained in Section 1(b) above, no portion of Plaintiffs' amended complaints against TIAA-CREF was justified by the Sixth Circuit's holding. TIAA-CREF should not have been forced to defend any portion of the pending action; accordingly, *all* of TIAA-CREF's fees were excess fees incurred because of Plaintiffs' conduct.

Plaintiffs further argue that TIAA-CREF over-litigated its defense of this action, filing a Motion to Dismiss and for Summary Judgment and an opposition to Plaintiffs' Motion for Partial Summary Judgment when it should have simply filed a Motion for Interpleader pursuant to Rule 22, Fed. R. Civ. P. While the Court agrees that interpleading the funds remaining in Chalker's TIAA-CREF accounts[4] would have been a possible litigation strategy for TIAA-CREF, the Court will not punish TIAA-CREF for adopting a more zealous defense strategy in light of Plaintiffs' conduct. As discussed above, Plaintiffs reneged on an offer to dismiss TIAA-CREF from this action; TIAA-CREF was then justified in filing a Motion to Dismiss and for Summary Judgment on the merits of why that dismissal should have occurred at the outset. The Motion to Dismiss and for Summary Judgment was a concise six pages. (Doc. No. 67.) TIAA-CREF's opposition to Plaintiffs' Motion for Partial Summary

---

[4] Pursuant to prior orders of the Pima County Superior Court, in 1996 TIAA-CREF transferred all funds from Catz's accounts into accounts in Chalker's name; of the $515,011.08 transferred from Catz to Chalker in 1996, only $54,000 remained in Chalker's TIAA-CREF account in 2005.

10

Judgment was a one-page document that essentially reiterated the arguments presented in TIAA-CREF's Motion to Dismiss and for Summary Judgment. (Doc. No. 86.) Accordingly, the Court rejects Plaintiffs' assertion that TIAA-CREF's fees in this case were excessive.

### d. *Plaintiffs Catz, J. Catz and S. Catz should be jointly and severally liable for payment of TIAA-CREF's fees*

Section 1927 sanctions may be awarded solely against the attorney who pursues the vexatious litigation, not his/her clients. *See F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986) (holding that, under 28 U.S.C. § 1927, district court could not assess sanctions against non-attorney). Section 1927 sanctions may, however, be awarded against a *pro se* plaintiff proceeding in his/her own right, unrepresented by counsel. *See Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990) (applying 28 U.S.C. § 1927 to a non-lawyer *pro se* litigant); *see also Sassover vs. Field*, 973 F.2d 75, 80 (2d Cir. 1992) (applying 28 U.S.C. § 1927 against a plaintiff who, though acting *pro se*, was a lawyer).

Plaintiff Catz, as a *pro se* litigant who is also a lawyer, was clearly the driving force behind this litigation, drafting and filing most of Plaintiffs' pleadings. Catz argues that he "functionally represented Shawn Catz and Jason Catz" (Opposition to Chalker Defendants' Motion, pg. 10) and therefore his sons should not also be held liable for fees. However, a review of the record indicates that J. and S. Catz condoned and in fact supported their father's conduct in this matter: J. and S. Catz signed both amended complaints following the Court's order that the complaints be amended to omit any claims which were barred by previous litigation (Doc. Nos. 51, 52); participated in discovery requests (Doc. Nos. 53-56); filed, with Catz, a motion for partial summary judgment (Doc. No. 57, 62); and filed, with Catz, a motion to treat Defendants' motion to dismiss as a motion for summary judgment. (Doc. No. 72.). S. Catz also joined in Catz's responses to the Chalker Defendants' motion to dismiss and motion for attorneys' fees, kept the Court apprised of his new address, inquired as to the status of pending motions, and joined Catz in appealing the Court's order dismissing the case (Doc. Nos. 91, 92, 114, 134, 139, 151.) J. Catz also joined in Catz's responses to the motions for attorneys' fees filed by TIAA-CREF and the Chalker

Defendants.[5] (Doc. Nos. 132, 133.) Given this active participation by J. Catz and S. Catz in the pending matter, the Court recommends that all three Plaintiffs be held jointly and severally liable for TIAA-CREF's fees in this matter.

**2.      The Chalker Defendants' Motion for Attorneys' Fees[6]**

   *a.      The Chalker Defendants are entitled to attorneys' fees pursuant to § 1983*

The Chalker Defendants move for payment of their attorneys' fees pursuant to 42 U.S.C. § 1988, which permits a prevailing party defendant in a 42 U.S.C. § 1983 action to recover fees if it demonstrates that the plaintiff's action was frivolous, vexatious or meritless.[7] *See Christiansburg*, 434 U.S. at 421.

---

[5] In addition, the Court notes that J. Catz graduated from law school in 2002 and was admitted to practice in 2003. (Opposition to Chalker Defendants' Motion, pg. 10.)  The present action was removed to this Court on February 4, 2003, and therefore the bulk of this litigation occurred following J. Catz's admission to the practice of law. It can therefore be presumed that J. Catz was not blindly led into litigation that he did not understand.

[6] Plaintiffs argue, incorrectly, that the Chalker Defendants' Motion was not timely filed pursuant to LRCiv 54.2(b)(1). LR Civ 54.2(b)(1) requires a motion for award of attorneys' fees to be filed within fourteen days of the entry of judgment in the action with respect to which the services were rendered. LRCiv54.2(b)(4) provides that the time periods prescribed in the rule are to be computed in accordance with Rule 6, Fed. R. Civ. P. Rule 6(e), Fed. R. Civ. P., adds three days to a prescribed time period whenever a party must act after service made pursuant to Rule 5(b)(2)(B, (C) or (D) (service by mail, clerk of the court or other means consented to by the party being served). Judgments must be served by the clerk of this Court pursuant to Rule 5(b). *See* Rule 77(d), Fed. R. Civ. P.  Thus, the fourteen-day time period set forth in LRCiv 54.2(b)(1) was enlarged by three days pursuant to the Federal Rules. The judgment was entered on September 19, 2006. (Doc. No. 124.) Defendants' Motion was timely filed on October 5, 2006. (Doc. No. 129.)

[7] Claims for fees under 42 U.S.C. § 1983 are governed by LRCiv 54.2, which states that a party seeking an award of attorneys' fees must file a motion for an award of attorneys' fees along with a supporting memorandum. The memorandum must specifically discuss the moving party's eligibility for fees, entitlement to fees and the reasonableness of the fee request. The memorandum must also include supporting documentation, including a task-based itemized statement of fees and expenses. In the present case, the Chalker Defendants submitted a memorandum and a task-based itemized statement of fees and expenses in compliance with LRCiv 54.2. (Doc. No. 129, Ex. A.) A party opposing a motion for an award of attorneys' fees is required to file a responsive memorandum which identifies with specificity all disputed issues of material fact and separately identifies each and every disputed time entry and/or expense item. See LRCiv 54.2(f). In the present case, Plaintiffs did not comply with LRCiv 54.2(f)'s requirement that they submit a responsive memorandum which separately identifies each and every disputed time entry and/or expense item. It is unclear why Plaintiffs elected not to comply with the requirements of LRCiv 54.2. Plaintiffs were clearly aware of LRCiv 54.2's requirements, given that Plaintiffs cited to the Local Rule in their Response to the Chalker Defendants' Motion in support of their claim that the Motion was not timely filed. (Doc. No. 131, pg. 2.)

12

The Chalker Defendants contend that Plaintiffs' action was frivolous and meritless because Plaintiffs knew, or should have known, based upon rulings by this Court and others, that their claims were barred by res judicata, issue preclusion and failure to state a claim under 42 U.S.C. § 1983. Plaintiffs counter that the pending action was not meritless because the Sixth Circuit's decision left open the possibility that Plaintiffs could pursue a due process claim against the Chalker Defendants, despite the fact that they were not state actors, under a judicial collusion theory.

As a threshold matter, Plaintiffs' claim that the Sixth Circuit's decision left them with a valid due process claim against the Chalker Defendants does not begin to explain why Plaintiffs felt justified in also bringing claims against the Chalker Defendants for negligence, fraud, deceit, misrepresentation, intentional infliction of emotional distress, abuse of process, wrongful attachment and "constructive trust for equitable disgorgement of misbegotten grossly excessive attorneys fees." (Doc. Nos. 51 & 52.) Furthermore, contrary to Plaintiffs' assertion, the Sixth Circuit's decision did not leave a door open for their judicial collusion theory. As the District Court has already noted, that claim was clearly barred by the Sixth Circuit's decision in *Catz*:

> [Plaintiffs are] reasserting the judicial collusion theory for state action already rejected by the Sixth Circuit ...The Sixth Circuit was acutely aware of Catz's judicial collusion theory for state action as it went into great detail discussing his alleged due process violations and the allegations of conspiracy between Karp and a Pima County Superior Court judge ... [nevertheless] the court addressed Catz's allegations of constitutional deprivations under 42 U.S.C.§ 1983 and § 1985 on the merits, and concluded that the private Defendants in question could not be liable for the alleged constitutional deprivations as they were not state actors acting under color of state law.

(Doc. No. 123, pgs. 13-15.)

As previously stated, the Sixth Circuit's decision left Plaintiffs with only one surviving claim: a claim against Pima County Superior Court alleging that actions of the Court taken or discovered subsequent to April 10, 1995, were in contravention of Plaintiffs' due process rights under the Fourteenth Amendment. That claim was not presented by the Plaintiffs when this matter was transferred to this Court. Instead, Plaintiffs elected to pursue numerous claims that were clearly barred by previous decisions of this Court and the Sixth

Circuit. Furthermore, Plaintiffs did so in direct contradiction to this Court's order that their complaints be amended to eliminate allegations and claims that were barred in light of the Sixth Circuit's opinion. For these reasons, the Court finds that Plaintiffs' action was meritless and frivolous, and that the Chalker Defendants are entitled to their fees pursuant to 42 U.S.C. § 1988. *See Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998) (holding that plaintiffs' action was meritless and frivolous so as to warrant sanctions under 42 U.S.C. § 1988 where, had plaintiffs made a reasonable inquiry into the applicable facts and law before filing their case, they would have discovered the insufficiency of their civil rights claim).

Plaintiffs also argue that Chalker cannot invoke 42 U.S.C. § 1988 because Plaintiffs did not bring a 42 U.S.C. § 1983 claim against her. The record belies this assertion. A review of Plaintiffs' amended complaints indicates that Plaintiffs' 42 U.S.C. § 1983 claim for damages was asserted against Karp and Everlove only. (Doc. No. 52, pg. 17.) However, Plaintiffs also brought a claim for equitable relief against Chalker which was grounded in due process theory: Plaintiffs claimed that prior orders of the Pima County Superior Court were obtained by the Chalker Defendants in violation of Plaintiffs' due process rights. (Doc. No. 51.) The district court, in dismissing this action, suggested (but did not explicitly state) that Plaintiffs had asserted a 42 U.S.C. § 1983 claim against all of the Chalker Defendants. (Doc. No. 123, pgs. 11-17.) Moreover, the dismissal was granted based upon a motion to dismiss filed by the Chalker Defendants. That motion argued that the 42 U.S.C. § 1983 claim was alleged against each of the Chalker Defendants; Plaintiffs' response to the motion to dismiss does not include any argument that the 42 U.S.C. § 1983 was not alleged against Chalker. Accordingly, the Court concludes that each of the Chalker Defendants is entitled to fees pursuant to 42 U.S.C. § 1988.

### *b.     The Chalker Defendants are entitled to attorneys' fees pursuant to 28 U.S.C. § 1927*

Because the Court concludes that the Chalker Defendants are entitled to their attorneys' fees pursuant to 42 U.S.C. § 1988, it need not consider whether the Chalker Defendants are also entitled to their fees pursuant to 28 U.S.C. § 1927. However, for reasons similar to those stated in Section 1(b) and 2(a), above, the Magistrate Judge

14

recommends finding that the Chalker Defendants are also entitled to their attorneys' fees pursuant to 28 U.S.C. § 1927. Plaintiffs brought numerous claims against the Chalker Defendants that were clearly barred by the doctrines of res judicata and collateral estoppel, conduct for which 28 U.S.C. § 1927 sanctions are especially appropriate. *See McLaughlin*, 602 F.Supp. at 1417. Plaintiffs' vexatious intent is further evidenced by the previous cautions given to Catz by this Court and others. *Id.* at 1418.

### ***c.    The Chalker Defendants are entitled to an award of their total fees***

For the reasons stated in Section 1(c) above, Plaintiffs' contention that the Chalker Defendants should not be entitled to recover the entirety of their fees incurred is without merit. *All* of the Chalker Defendants' fees were excess fees incurred because of Plaintiffs' conduct.

### ***d.    Plaintiffs Catz, J. Catz and S. Catz should be solely liable for payment of the Chalker Defendants' fees***

Plaintiffs argue that J. Catz and S. Catz should not be held liable for any fees owed to the Chalker Defendants. Fee sanctions imposed pursuant to 42 U.S.C. § 1988 may be levied against an attorney or a *pro se* litigant. *See Houston v. Norton*, 215 F.3d 1172 (10th Cir. 2000) (holding that a *pro se* plaintiff may be held liable for prevailing defendant's attorneys' fees pursuant to 42 U.S.C. § 1988). For the reasons stated in Section 1(d), above, J. Catz and S. Catz were actively involved in these proceedings. Accordingly, the Court recommends that the three Plaintiffs be held jointly and severally liable for the Chalker Defendants' fees in this matter.

**Recommendation**

For the foregoing reasons, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order:

1. GRANTING Defendant TIAA-CREF's Motion for Award of Attorneys' Fees filed on October 2, 2006 (Doc. No. 125);

2. GRANTING the Chalker Defendants' Motion for Award of Attorneys' Fees filed on October 5, 2006 (Doc. No. 129);

3.   AWARDING attorneys' fees and costs in the amount of $33,824.00 to TIAA-CREF against each Plaintiff jointly and severally.

4.   AWARDING attorneys' fees and costs in the amount of $66,126.00 to the Chalker Defendants against each Plaintiff jointly and severally.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. Any objections filed should use the following case number: **CV 03-91-TUC-FRZ**. If objections are not timely filed, they may be deemed waived.

DATED this 30th day of August, 2007.

_____
Jennifer C. Guerin
United States Magistrate Judge