# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Shawn D. Catz, *et al.*,
    Plaintiffs,
vs.
Susan R. Chalker, *et al.*,
    Defendants.

CV 03-91-TUC-FRZ (JCG)

**REPORT & RECOMMENDATION**

Pending before the Court is Defendants Karp and Everlove's ("Defendants") Brief re: Amount of Fees Attributable Solely to Karp and Everlove's Representation filed on August 31, 2009. (Doc. No. 212.) The Brief is supported by a Notice re: Filing Unredacted Attorneys' Fees Billing filed pursuant to Court Order on October 13, 2009. (Doc. No. 230.) Plaintiffs Jason and Robert Catz filed Oppositions to the Brief on October 30, 2009. (Doc. Nos. 231, 232 & 234.) Defendants filed a reply on November 23, 2009. (Doc. No. 245.)

Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin for a Report and Recommendation. (Doc. No. 249.) The Magistrate recommends that the District Court, after its independent review of the record, enter an Order awarding Defendants $53,697.45 in attorneys' fees.

## FACTUAL AND PROCEDURAL BACKGROUND

The preliminary facts of this case are set forth by the Sixth Circuit in *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *as amended* in 243 F.3d 234 (6th Cir. 2001):

> Catz and Chalker, lawyers and former law professors, were married in 1980 and they had one child born of this marriage. On April 10, 1989, while Catz was living in Ohio and Chalker was living in Florida, Catz filed for divorce in Ohio. When Chalker did not answer, Catz was awarded a judgment of divorce

by default. Chalker alleges that she was never served with the divorce summons and complaint because Catz sent them to a mailing address in Florida where they would be intercepted by Catz's friend and not delivered to her. She asserts that she did not learn of the Ohio divorce decree until late 1994. Whatever accounted for Chalker's absence, the Ohio court, after determining that the couple had not intermingled their personal property, awarded Catz his personal property located in Ohio and awarded Chalker her personal property then in her possession. (The judgment entry contained no mention of the financial assets now at issue.) The court declined to adjudicate custody of the child.

After the Ohio divorce decree, Catz and Chalker continued to see one another, and, according to Chalker, comported themselves as a married couple by applying as such for insurance and club memberships. Catz, however, alleges that during this period Chalker indicated that she was divorced on tax and student-loan forms. Whatever their marital status, in 1993 they moved to Arizona together.

On November 4, 1994, Chalker filed for divorce in the Pima County, Arizona, Superior Court, and on December 1, moved ex parte for a temporary restraining order barring the transfer of funds, claimed by her as community property, that were invested with entities including (to name those that are parties to the present actions) TIAA/CREF, Waterhouse Securities, and a number of mutual funds in the Fidelity group. In support of the motion, Chalker filed affidavits by herself and by a friend of the couple averring that Catz had vowed to put the assets out of Chalker's reach. The court granted Chalker's motion the same day the affidavits were filed.

Catz claims that he did not receive notice of Chalker's divorce action until December 14, 1994, over five weeks after it was filed and two weeks after the TRO. He then immediately filed an "emergency motion" to dismiss in the same court, on the grounds that the Ohio divorce decree, including its division of property, had to be given full faith and credit. Catz further alleged that the TRO freezing his assets would cause him severe hardship, including the destruction of his business as a concert promoter and bar owner, and render him unable to pay rent and other personal obligations.

The Arizona court initially scheduled a hearing on Catz's motion for December 19, 1994, but then-according to Catz, as a result of collusion between the court's chief judge and Chalker's counsel, a pro tempore judge of the court-continued the hearing until January 11, 1995.

On December 19, Catz filed a notice of removal of the divorce action in the United States District Court for the District of Arizona, alleging federal jurisdiction based on the divorce action's purported collateral attack, on federal equal protection and due process grounds, on the Ohio divorce decree. On January 12, 1995, that federal court remanded the case to state court, reasoning that it was a domestic relations controversy over which it would be inappropriate to exercise federal jurisdiction. (On March 14, 1995, Catz filed a second notice of removal in the district court; on March 31, the court remanded and ordered the clerk not to accept further pleadings from Catz without permission of the court.)

Also on December 19, 1994, Catz filed in the district court a § 1983 complaint ("the first Arizona federal action") alleging that Chalker's resonantly-named divorce attorneys, Annette Everlove and Leonard Karp, had deprived him of

2

due process "by invoking the machinery of the State of Arizona to effect an ex parte seizure of his property after they were aware of the possible existence of a prior controlling state court judgment." Catz's complaint also alleged that Chalker and her lawyers had fraudulently concealed the existence of the Ohio divorce decree from the Arizona court. In April 1995, for reasons unexplained, Catz filed a notice of voluntary dismissal of this action.

On December 20, 1994, Catz separately filed, in the same court, an action ("the second Arizona federal action") against Chalker seeking a declaratory judgment that Chalker had been properly served in the Ohio divorce proceeding. This action also included a § 1983 claim against Chalker similar to the one alleged in the first Arizona federal action against Chalker's attorneys. On April 10, 1995, he filed a motion for voluntary dismissal without prejudice in the second action, too. Chalker, however, filed a brief in opposition, and the district court, adopting by reference the reasons stated in Chalker's brief, dismissed the case with prejudice on June 8, 1995.

Meanwhile, claiming that the freezing of his accounts had left him destitute and homeless, Catz left Arizona in early 1995 for Nashville, Tennessee, to take refuge with his sons, Shawn and Jason. Thus, he was not in Arizona during the remainder of the ongoing divorce proceedings in Pima County Superior Court. Catz claims that he sent a change of address form to that court, showing that he had moved to Nashville, but that the court refused to receive this form, which Catz suggests contributed to his receiving notices of deposition and hearing dates only after they occurred. After Catz failed to appear at a February 9, 1995 deposition, Chalker moved for sanctions. Catz claims that the hearing on that motion was held without notice to him. Nevertheless, the court found that Catz's failure to appear was part of a pattern of "unreasonable, groundless, abusive, or obstructionist conduct," held him in contempt, and barred him from filing further pleadings, answers, or from introducing evidence.

On March 14, 1995, the Pima County court, again with Catz absent, ruled that Catz had fraudulently obtained his Ohio divorce, and refused to give the Ohio divorce decree full faith and credit. In light of Catz's failure to appear, the court granted Chalker's petition of divorce by default. The decree awarded Chalker all the funds frozen by the TRO, $1,000 per month in maintenance, and $700 per month in child support. Catz submitted a motion to vacate these orders, but the clerk did not file his motion, and returned it to Catz only after the time to file a notice of appeal had expired. He attempted to file a special appeal, but the Arizona Court of Appeals declined to accept jurisdiction, and the Arizona Supreme Court denied leave to appeal. Catz filed a petition for certiorari with the United States Supreme Court, which was denied. Catz v. McDonald, 520 U.S. 1168, 117 S.Ct. 1433, 137 L.Ed.2d 540 (1997).[1]

*Id.* at 281-83.

On July 27, 1995, Catz filed a complaint in the United States District Court for the Northern District of Ohio against Defendants Karp, Everlove & Chalker and sought a temporary restraining order against the financial institutions holding the assets awarded to

---

[1] In two previous orders, the District Court took judicial notice of the pleadings, briefs, memoranda and motions filed in the underlying and related litigation. (Doc. Nos. 122 & 123.)

3

Chalker by the Pima County court to bar them from disbursing those funds. *Catz*, 142 F3d. at 283-84. The Ohio district court dismissed the case with prejudice. *Id*. at 284. Catz also filed an action in the United States District Court for the Middle District of Tennessee; that action was also dismissed. *Id*. at 290. Catz appealed both dismissals, which were consolidated before the United States Court of Appeals for the Sixth Circuit. *Id*. at 282. The Sixth Circuit affirmed in part and reversed in part the decision of the Ohio district court, and reversed and remanded the decision of the Tennessee district court. *Id*. at 290, 295. Following remand, the Tennessee action was transferred to this Court on February 4, 2003, giving rise to the present action. (Doc. Nos. 1, 31.)

       Following the transfer of Plaintiffs' action to this Court, Plaintiffs were ordered to file amended complaints[2] that eliminated allegations and claims that were barred in light of the Sixth Circuit's opinion in *Catz*. (Doc. No. 50.) On February 7, 2005, Plaintiffs filed amended complaints against Defendants Karp & Everlove, Chalker, TIAA-CREF, Fidelity Investments, and Waterhouse Securities alleging a Fourteenth Amendment due process claim as well as claims for negligence, fraud, deceit, misrepresentation, intentional infliction of emotional distress, abuse of process, wrongful attachment and "constructive trust for equitable disgorgement of misbegotten grossly excessive attorneys' fees." (Doc. Nos. 51 & 52.) Karp, Everlove & Chalker filed a single motion to dismiss the First Amended Complaints on May 5, 2005. (Doc. No. 69.) The District Court dismissed Plaintiffs' action on September 19, 2006 on the ground that Plaintiffs' claims were precluded by previous litigation, with the exception of a Fourteenth Amendment due process claim. (Doc. No. 123.) The Court dismissed Plaintiffs' Fourteenth Amendment due process claim for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the ground that Defendants were not state actors.

---

[2] Plaintiffs' action consists of two complaints which were consolidated in the Tennessee district court and remained consolidated upon transfer to this jurisdiction; the complaints are essentially identical but for the fact that one complaint seeks damages and one complaint seeks equitable relief. (Doc. Nos. 51, 52.)

Shortly after the judgment was entered, Defendants moved for award of their fees incurred in defending the action. At all times relevant to this Report & Recommendation, Chalker, Karp & Everlove were jointly represented in the pending litigation by the law firm of Broening, Oberg, Woods & Wilson. On October 26, 2007, the District Court adopted a Report & Recommendation issued by the undersigned Magistrate regarding the Motion for Attorneys' Fees filed by Defendants Karp, Everlove & Chalker, as well as a Motion for Attorneys' Fees filed by Defendant TIAA-CREF. (Doc. No. 163.) Specifically, and in relevant part, the District Court adopted the Magistrate's findings that Defendants Karp, Everlove & Chalker were entitled to fees pursuant to 42 U.S.C. § 1988 ("§ 1988"), which permits a prevailing party defendant in a 42 U.S.C. § 1983 action to recover fees if the party demonstrates that the plaintiff's actions were frivolous, vexatious or meritless. (Id.) The District Court also adopted the Magistrate's findings that Defendants Karp, Everlove & Chalker were entitled to fees pursuant to 28 U.S.C. § 1927 ("§ 1927"), which provides that "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." The District Court awarded Defendants Karp, Everlove & Chalker $66,126.00 in attorneys' fees. (*Id.*)

Plaintiffs appealed the District Court's Order and on May 13, 2009, in an unpublished memorandum decision, the Ninth Circuit reversed in part and vacated and remanded in part the District Court's decision. (Doc. No. 196.) The Ninth Circuit reversed the award of fees to Chalker but affirmed the award of fees to Karp & Everlove. The Ninth Circuit noted that Chalker could not recover fees under §1988 because she was not a prevailing party to a §1983 action.[3] (*Id.*) The Ninth Circuit also held that Plaintiffs had pursued against Chalker a claim left open to them by the Sixth Circuit's decision, and therefore Chalker was not

---

[3] In a companion appeal, the Ninth Circuit reversed the grant of Chalker's motion to dismiss Plaintiffs' First Amended Complaint for Equitable Relief, which named Chalker as a defendant and TIAA-CREF as a stakeholder defendant. In doing so, the Ninth Circuit found that Plaintiffs had not filed a § 1983 claim against Chalker and therefore Chalker was not entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

entitled to fees pursuant to § 1927. The Ninth Circuit affirmed the District Court's holding that Defendants Karp & Everlove were entitled to attorneys' fees pursuant to both §1988 and § 1927. The Ninth Circuit noted that Plaintiffs never disputed the reasonableness of the fees submitted by the attorneys for Karp, Everlove & Chalker, and therefore Plaintiffs had "waived any claim on that score." (*Id.*) The Ninth Circuit held that Defendants Karp & Everlove were entitled to "all reasonable attorneys' fees." The Ninth Circuit further held that because Chalker, Karp & Everlove were jointly represented by the same attorneys, and the grant of fees to Chalker had been reversed, it was appropriate to remand to the District Court "for consideration of the amount of fees attributable solely to [representation of Karp & Everlove]."[4] (*Id.*) In so holding, the Ninth Circuit noted that "where frivolous claims are combined with non-frivolous claims, a court may award the fees for defending against the frivolous claims even though the claims arise from the same operative facts." (*Id.*, citing *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1059-60 (9th Cir. 2006.)).

Following remand, Plaintiffs requested that the issue of Defendants' attorneys' fees be re-referred to the Magistrate. (Doc. No. 247.) The District Court granted the request and on December 2, 2009, referred this matter to the Magistrate "for the limited purpose of issuing a Report & Recommendation pertaining to the post-remand dispute regarding attorneys' fees reflected in 'Defendant Karp & Everlove's brief re: amount of fees attributable solely to Karp and Everlove's representation.'" (Doc. No. 249.)

## DISCUSSION

On October 13, 2009, attorneys for Defendants filed unredacted copies of their billing statements related to their representation of Chalker, Karp & Everlove. (Doc. No. 230.) The billing statements are divided into ten Invoices containing 598 separate time entries. Defendants highlighted on each of the Invoices those fees that were arguably attributable solely to representation of Chalker. After taking deductions for the Chalker fees, Defendants

---

[4] The Ninth Circuit also remanded for consideration as to whether Karp & Everlove's attorneys' fees may be imposed on Shawn Catz; on August 28, 2009 the parties stipulated that Shawn Catz would not be liable for those fees. (Doc. No. 211.) The stipulation was granted on September 2, 2009 (Doc. No. 213) and therefore that issue has been resolved.

contended that, of the $66,126.00 originally awarded to Chalker, Karp & Everlove, $59,513.50 was attributable to representation of Karp & Everlove.

Plaintiffs Robert and Jason Catz filed separate Oppositions to Defendants' Brief, raising numerous arguments challenging the $59,513.50 requested by Defendants and arguing that Defendants were entitled to no more than $3,730.00 in attorneys' fees. In their Reply, Defendants conceded a few errors[5] noted by Plaintiffs and amended their fee request to $54,379.95.

Plaintiffs present eight objections to the remaining $54,379.95 in fees requested by Defendants: (1) Defendants are entitled only to those fees *solely* attributable to their representation of Karp & Everlove; (2) Defendants' fee statements do not meet the standards of specificity required by LRCiv. 54.2(e); (3) Defendants failed to support their request for fees with an affidavit required by LRCiv. 54.2(d)(5); (4) Defendants cannot recover fees incurred before the filing of the First Amended Complaint on February 7, 2005; (5) Defendants' counsel represented Chalker prior to September 27, 2004; (6) the invoices supporting Defendants' pending Brief included an additional $1,034.58 in fees that were not included in their original Motion for Attorneys' Fees; (7) Defendants unreasonably billed for duplication of effort and non-compensable tasks; (8) the doctrine of judicial estoppel bars Defendants from any award of fees.[6]

---

[5] Specifically, Defendants agreed with Plaintiffs' assertions that: (1) entries 96 and 104 on Invoice Four, entry 185 on Invoice Five, entries 392 and 407 on Invoice Six and entries 427, 434, 438, 447 and 449 on Invoices Seven-Ten are solely attributable to representation of Chalker; (2) Defendants were unable to reconcile a $561.50 discrepancy in Invoice Six; and (3) the $3,760.05 previously garnished from Jason Catz's wages should have been subtracted from the total fee award.

[6] Because Plaintiffs have broadly stated their objections to Defendants' requested fees in their Oppositions, the Magistrate has determined that the most efficient and expeditious method of addressing the pending fee issue is to consider the eight major categories of Plaintiffs' objections. To the extent Plaintiffs have submitted to the Court color/number-coded, marked-up copies of Defendants' invoices and expect the Magistrate to cross-reference those exhibits in order to consider each of Defendants' 598 time entries individually, the Magistrate declines to do so.

**1. Defendants are entitled to all fees attributable to their representation of Karp & Everlove.**

In submitting their request for $54,379.95 in fees, Defendants argue that they are entitled to any fees which involved representation of Karp, Everlove and Chalker, because those items were necessary for the representation of Karp & Everlove, regardless of the representation of Chalker. In other words, Defendants have excluded from their total fees those time entries solely attributable to Chalker. Plaintiffs object, arguing that any time entries involving the representation of Karp, Everlove and Chalker should be excluded from the fee calculation. In other words, Plaintiffs contend that Defendants are only entitled to fees solely attributable to Karp & Everlove. The distinction matters because, according to Plaintiffs, Defendants spent only $3,730 on tasks related solely to the claims against Karp & Everlove. (Doc. No. 231, pg. 10.)

The language used by the Ninth Circuit in its decision is not clear on this issue. On the one hand, the Ninth Circuit remanded to the District Court "for consideration of the amount of fees attributable solely to [representation of Karp & Everlove]." However, the Ninth Circuit also held that the Defendants were entitled to fees under both statutory provisions, stating: "the filing of the amended complaint against Karp & Everlove was 'frivolous' and the District Court did not abuse its discretion in awarding fees to Karp & Everlove under [§1988];" Karp & Everlove were entitled to "all reasonable attorneys' fees"; and that "where frivolous claims are combined with non-frivolous claims, a court may award the fees for defending against the frivolous claims even though the claims arise from the same operative facts."

The Magistrate concludes that the most reasonable construction of the Ninth Circuit's decision, given the applicable statutes and the equitable considerations at stake, is that Defendants are entitled to an award of all attorneys' fees incurred in defending the meritless claims against Karp & Everlove, regardless of whether the work done on behalf of Karp & Everlove might have also benefitted Chalker.

### a. Award of fees pursuant to § 1988.

In determining a fee award for a defendant who successfully defends a frivolous § 1983 action that also involves non-frivolous claims, the Court must first evaluate whether the frivolous and non-frivolous claims were interrelated. Claims are interrelated if they arise from "a common core of facts" or are "based on related legal theories." *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In the present case, the Court concludes that Plaintiffs' § 1983 claim against Karp & Everlove was interrelated with Plaintiffs' equitable relief/due process claim against Chalker. The complaints filed against all three defendants presented identical factual allegations. (Doc. Nos. 51 & 59.) The § 1983 claim against Karp & Everlove was based on a "judicial collusion" theory that was closely related in facts and legal theory to Plaintiff's equitable relief/due process claim against Chalker. Defendants filed one motion to dismiss on behalf of Karp, Everlove & Chalker arguing that all three defendants were entitled to dismissal on *res judicata* grounds, and the District Court dismissed on those grounds. *See Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1059-60 (9th Cir. 2006) (noting that claims are distinct if the merits of each claim can easily be evaluated separately and are argued separately throughout the proceedings).[7]

Where frivolous and non-frivolous claims are interrelated, the United States Supreme Court has indicated that the fee award should bear a relationship to the extent of the prevailing party's success:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's

---

[7] Although the Ninth Circuit cited *Tutor-Saliba* in support of its direction to the District Court to "weigh and assess the amount of fees attributable to the frivolous claims" it did not comment on whether the claims against Karp, Everlove and Chalker were interrelated. Plaintiffs' reliance on *Tutor-Saliba* and *Quintana* (Doc. No. 231, pgs. 7-8) is misplaced, given that both cases involved distinct, rather than interrelated, frivolous and non-frivolous § 1983 claims. *See Tutor-Saliba*, 452 F.3d at 1064 n.4 ("Because we conclude that Tutor's claims were not intertwined, we do not reach the question of whether a district court may award partial attorney's fees where frivolous claims are combined with non-frivolous claims and the claims are not sufficiently distinct.").

9

> fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley*, 461 U.S. at 435, 440. Although *Hensley* discusses an award of fees to a prevailing § 1983 plaintiff, its reasoning applies with equal force to a defendant who successfully defends a frivolous § 1983 action. *See Ward v. Hickey*, 996 F.2d 448, 455-56 (1st Circuit 1993) (rejecting argument that defendant who prevails on defeating frivolous § 1983 claims interrelated with non-frivolous § 1983 claims is not entitled to any fees; "frivolous civil rights claims waste judicial resources that would otherwise be used for legitimate claims. . . . Accordingly, a district court should not deny fees for defending frivolous claims merely because calculation would be difficult."), *cited with approval by Ninth Circuit in Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055 (9th Cir. 2006). In the present case, Defendants were completely successful at obtaining dismissal of the § 1983 claim alleged against Karp & Everlove.[8] Because Defendants obtained "excellent results" they are entitled to a "fully compensatory fee." *Hensley*, 461 U.S. at 440. Plaintiffs are not entitled to a reduction in that fee simply because some of the time spent defending Karp & Everlove against a frivolous § 1983 claim was also related to defending Chalker against a non-frivolous due process claim. As Defendants point out, the work performed on behalf of Karp & Everlove was necessary to defending Karp & Everlove against a frivolous § 1983 claim, regardless of the representation of Chalker.

Moreover, the Court notes that the rationale behind limiting § 1988 fees for frivolous claims that are combined with non-frivolous claims is to honor Congress' intent to promote the enforcement of plaintiffs' civil rights. *See Quintana v. Jenne*, 414 F.3d 1306, 1312 (11th Cir. 2005). This rationale has no application here: as the Ninth Circuit has made clear, Plaintiffs did not pursue a § 1983 claim against Chalker. Accordingly, Plaintiffs are not entitled to any of the special protections afforded to § 1983 plaintiffs. Furthermore, as the

---

[8] Moreover, the Court notes that Defendants were successful in defending Karp & Everlove against all claims brought against them, and that all such claims were determined to be frivolous.

10

court in *Quintana* noted, "it would . . . undermine the intent of Congress to allow plaintiffs to prosecute frivolous claims without consequences merely because those claims were joined with unsuccessful claims that were not frivolous." *Id.*

Finally, the Court is unpersuaded by Plaintiffs' citation to SCHWARTZ AND KIRKIN, SECTION 1983 LITIGATION, STATUTORY ATTORNEYS FEES, VOL. 2, pg. 482 (1997). That treatise states that "if frivolous and nonfrivolous claims are closely related because of shared facts, evidence or legal theories, or because the attorney time spent on the different claims is inseparable, the defendant is not entitled to § 1988 fees for time expended in defending against the frivolous claim." In support of that conclusion, however, the treatise cites to *Jensen v. Stangel*, 762 F.2d 815, 819 (9th Cir. 1985). In *Jensen*, the Ninth Circuit reversed the lower court's award of attorneys fees to defendants in a civil rights action against the City of San Jose and individual police officers. *Id*. at 819. The Court found that the plaintiff's claim against the individual officer was not frivolous and reversed the fee award as to that officer. The Court also reversed the award to the City of San Jose, even though plaintiff's claim against the City may have become frivolous after discovery failed to produce evidence supporting plaintiff's claims. The Court did so, however, because the defense attorney admitted to spending "the bulk of his time defending [the nonfrivolous claim]" and conceded the "city's fee claim would rise and fall with the [officer's] claim." *See id.* Thus, *Jensen* is factually distinguishable from the present case.

### b. Award of fees pursuant to § 1927

Regardless of what portion of their fees Defendants are entitled to recover pursuant to § 1988, they are entitled to the full amount of their fees pursuant to § 1927. An award of fees pursuant to § 1927 is "penal in nature." *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir 1991); *see also Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). When the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under § 1927 may shift the entire financial burden of an action's defense. *Browning,* 931 F.3d at 344. In the present case, Plaintiffs pursued claims for violation of due process, negligence, fraud, deceit, misrepresentation, intentional infliction of emotional

11

distress, abuse of process, wrongful attachment and "constructive trust" against Defendants. The District Court concluded, and the Ninth Circuit affirmed, that each of these claims was clearly precluded by prior court orders. (Doc. No. 196-1, pg. 5.) In addition, all of Plaintiffs claims against Defendants were dismissed as early as possible in the proceedings – in the granting of a motion to dismiss. The fact that the claims against Defendants were found meritless at the outset of the proceedings demonstrates that all of the fees incurred by Defendants were related to the defense of vexatious claims and therefore excessive. *See id.* at 345 (noting, conversely, that in a case that proceeded through discovery, past summary judgment, and past motions to dismiss "[o]ne might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to get to trial." (citation omitted)); *United States v Associated Convalescent Enterprises Inc*, 766 F2d 1342, 1347 (9th Cir. 1985) (district court reduced amount of sanctions sought by plaintiff where it found defense attorney's conduct did not cause loss of all time and money expended in trial preparation).

The penal goal of § 1927 is best served in the present case if Defendants are awarded all of the fees incurred in defending the meritless claims against them, regardless of whether those fees would also have been incurred in defending Chalker. All of the work performed by defense counsel on behalf of Defendants was necessitated by Plaintiffs' actions in unreasonably multiplying the proceedings against Defendants. Had Defendants and Chalker been represented by separate counsel, it would be clear that Defendants were entitled to all of the fees incurred in defending Plaintiffs' vexatious and meritless claims. The fact that Chalker was represented by the same counsel as Defendants should not affect the award of fees pursuant to § 1927. If Defendants were awarded only those fees that were in no way related to Chalker's defense, Plaintiffs would essentially avoid the penalty of § 1927. Accordingly, the Magistrate recommends that Defendants be awarded the full amount of the fees related to their defense.

**2.     Plaintiffs have waived any claim that Defendants' fee statements do not meet the standards of specificity required by Local Rule 54.2(e).**

Plaintiffs contend that Defendants time entries fail to meet the standards of specificity required by LRCiv. 54.2(e). Plaintiffs had an opportunity to object to Defendants' fee

statements when they were submitted on October 5, 2006. (Doc. No. 129.) *See* LRCiv 54.2(b) (setting forth the procedure for filing objections to motion for attorneys' fees). As the Ninth Circuit concluded, Plaintiffs "never disputed the reasonableness of the individual items billed, and have thus waived any claim on that score." (Doc. No. 196, pg. 6.) Accordingly, Plaintiffs cannot assert a challenge to Defendants' fee statements arising under LRCiv. 54.2(e).

**3.     Defendants supported their request for fees with an affidavit required by LRCiv. 54.2(d)(5).**

Plaintiffs contend that Defendants have failed to support their fee statements with an affidavit as required by LRCiv. 54.2(d)(4). However, Defendants submitted the required affidavit when they submitted their fee statements as part of their Motion for Attorneys' Fees filed on October 5, 2006. (Doc. No. 129-1.) Accordingly, this argument is without merit.

**4.     Defendants are entitled to fees incurred before the filing of the First Amended Complaint on February 7, 2005.**

Plaintiffs contend that Defendants are not entitled to fees incurred before the filing of the First Amended Complaint on February 7, 2005. However, the District Court already approved, and the Ninth Circuit affirmed, a fee period beginning on March 27, 2003. The District Court's Order granting Defendants' Motion for Attorneys' Fees awarded Defendants $66,126, an amount based on fee statements submitted by Defendants in support of their Motion and covering services provided from March 27, 2003 through May 31, 2006. (Doc. Nos. 163 & 129.) The Ninth Circuit affirmed that fee award except on the issue of which portion of the $66,126 was attributable to services benefitting Karp & Everlove. Plaintiffs had an opportunity to object to the time period identified by Defendants when they responded to the Motion for Attorneys' Fees. As stated in Section 2, above, arguments which Plaintiffs failed to raise regarding the reasonableness of Defendants' fees have been waived.

**5.     There is no evidence before the Court suggesting that Defendants' counsel represented Chalker prior to September 27, 2004.**

In response to Defendants' assertion that all fees incurred by Defendants prior to November 4, 2004 – when counsel for Defendants undertook representation of Chalker – are attributable solely to Karp & Everlove, Plaintiffs argue that Defendants' counsel represented

13

Chalker prior to November 4, 2004. In support of this claim, Plaintiffs cite to two time entries: entry # 32, which states "11/4/2003: preparation of email to S. Kleczynski RE Chalker" and entry # 38, which states "11/21/2003: Review email from C. McElroy RE draft response for defendant Chalker (.1) review draft response for defendant Chalker (.3)." The Court finds nothing in these entries to suggest that counsel for Defendants was representing Chalker in November, 2003. At best, the entries suggest that counsel for Defendants may have been coordinating defense strategy with other defense counsel. The Court notes that counsel for Defendants filed a Notice of Appearance on behalf of Chalker on November 4, 2004. (Doc. No. 45.) Plaintiffs have failed to demonstrate that Defendants represented Chalker prior to that date.

**6. The invoices supporting Defendants' pending Brief include an additional $682.50 in fees that were not included in their original Motion for Attorneys' Fees**.

Plaintiffs contend that Defendants claimed an additional $1,034.58 in Invoice 10 of the fee statements submitted on October 13, 2009 that was not included in the fee statements submitted on October 5, 2006. The Magistrate's review of the fee statements submitted by Defendants indicates that a charge for $1,034.38 appears on Invoice 9, not Invoice 10, of the October 13, 2009 fee statements. The Court's review further indicates that a statement for $1,034.38 was included in both fee statement submissions. (Doc. No. 129-10, pg. 3; Doc. No. 230-9, pg. 4.) The totals for each Invoice in the October 5, 2006 submissions and the October 13, 2009 submissions are identical with one exception: the Court notes that Invoice 10 of the October 13, 2009 fee statements does not appear in the October 5, 2006 statements. Invoice 10 of the October 13, 2009 fee statements seeks a total of $682.50 in fees. Accordingly, the Court recommends a $682.50 deduction in the $54,379.95 requested by Defendants.[9]

---

[9] The $66,126.00 originally granted by the District Court was based on the amount requested in the affidavit of Donald Wilson, submitted in support of Defendants' October 5, 2006 Motion for Attorneys' Fees. (Doc. No. 129-1, pg. 2.) Review of the fee statements attached to the affidavit indicates that the total fees incurred by Defendants actually totaled $68.137.79. It is unclear why Defendants requested only $66,126.00 of this amount.

14

**7. Plaintiffs have waived any claim that Defendants unreasonably billed for duplication of effort and non-compensable tasks.**

Plaintiffs contend that Defendants excessively billed for attorney services that had already been performed by Tennessee counsel, as well as for non-compensable tasks in violation of LRCiv 54.2. As stated in Section 2, above, Plaintiffs have waived their opportunity to object to the reasonableness of Defendants' fees, and cannot challenge Defendants' fees on this ground.

**8. The doctrine of judicial estoppel does not apply to bar Defendants from any award of fees.**

Plaintiffs contend that the doctrine of judicial estoppel bars Defendants from any award of fees in this matter. Although this argument is not coherently stated, Plaintiffs appear to be claiming that it was improper for Defendants to request fees for representation of Karp, Everlove *and* Chalker in their initial fee motion, but then limit their fee request to fees incurred in representing Karp & Everlove in the pending matter. This argument is without merit. Defendants have changed their position with respect to the requested fees only insofar as Defendants have complied with the Court's Order to limit their fee request to fees related to Karp & Everlove.

## RECOMMENDATION

For the foregoing reasons, the Magistrate recommends the District Court, after its independent review of the record, enter an order awarding to Defendants their attorneys fees in the amount of $53,697.45 (calculated as $54,379.95 requested by Defendants less $682.50 in fees not originally included in the October 5, 2006 Motion for Fees).

//
//
//
//
//

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. Any objections filed should use the following case number: **CV 03-91-TUC-FRZ**. If objections are not timely filed, they may be deemed waived.

DATED this 17th day of March, 2010.

Jennifer C. Guerin
United States Magistrate Judge